350 A.2d 602.

CHARLES J. FOX, JR. *vs.* DOROTHY F. FOX.

JANUARY 29, 1976.

PRESENT: Paolino, Acting C. J., Joslin and Kelleher, JJ.

594

KELLEHER, J. The litigants in this Superior Court civil action are married to each other. On April 9, 1970, the wife filed a petition in the Family Court for a bed and board divorce and also asked that she be given such ancillary relief as custody of the minor child, exclusive use of the marital domicile and separate maintenance for herself and support for the child. Almost a year later, February 25, 1971, the husband countered with a cross-petition in which he asked for an absolute divorce and

custody of the child. On the same date, he filed this civil action which asked that the couple's real estate be partitioned. Commissioners were appointed and a justice of the Superior Court ordered a sale of the property. In her appeal the wife challenges the denial of her motion which sought to either dismiss this action or transfer it from the Superior to the Family Court.

Her motion is premised on the contention that when the General Assembly at its January, 1972 session gave the Family Court jurisdiction to entertain partition proceedings, the Superior Court was then divested of any jurisdiction to proceed further in this controversy. We do not agree.

To place the 1972 legislation in a somewhat historical perspective, we will first allude to the holding in *Rogers* v. *Rogers,* 98 R. I. 263, 201 A.2d 140 (1964). There, the issue was whether or not the Family Court could order a husband to make an accounting to the wife and give her a proportionate share of the profits realized from the operation of a motel that stood in their joint names. The trial justice in *Rogers* maintained that the Family Court had exclusive jurisdiction to resolve any controversy that arose between a husband and wife, including partition of their real estate, the appointment of receivers and the reaching of a spouse's interest in trust property. The pertinent legislation under the review in *Rogers* was G .L. 1956 (1969 Reenactment) §8-10-3. It read as follows:

> "There is hereby established a family court * * * to hear and determine all petitions for divorce from the bond of marriage and from bed and board; all motions for allowance, alimony, support and custody of children, * * * and other matters *including all petitions and motions relative to real and personal property in aid thereof* affecting the parties and children wherein jurisdiction is acquired by the court by the filing of such petitions for divorce * * *." (Emphasis added.)

596

In *Rogers* we disagreed with the view expressed by the trial justice and pointed out that the Family Court was a statutory tribunal possessing only such jurisdiction as was explicitly conferred upon it by the Legislature. Moreover, we found that the Legislature, in authorizing the court to hear and determine motions and petitions relative to real or personal property in divorce proceedings, intended that the court's power over property owned by the husband be restricted to those instances where it was necessary to use the property as security for the payment of alimony or support. The 1972 amendment might be considerd as a rather belated reply to our holding in *Rogers.* It amended §8-10-3 so that the Family Court could hear and determine "* * * other matters arising out of petitions and motions relative to real and personal property in aid thereof, including, but not limited to, partitions, accountings, receiverships, sequestration of assets, resulting and constructive trusts, impressions of trust, and such other equitable matters arising out of the family relationship, wherein jurisdiction is acquired by the court by the filing of petitions for divorce, bed and board and separate maintenance * * *."

The amendment became law on April 12, 1972. At that time, the partition action had been pending in the Superior Court for over a year and the order directing the commissioners to sell the property had been outstanding for almost 6 months.

The jurisdictional issue raised by the wife can be resolved by a brief reference to the relevant canons of statutory construction. As a general rule, statutes and their amendments are construed to operate prospectively unless a specific contrary intent is expressed by the Legislature, or retroactivity must necessarily be inferred from the language employed by the law makers. *Norton* v. *Paolino,* 113 R. I. 728, 327 A.2d 275 (1974); *Town of Warren* v.

*Frost,* 111 R. I. 217, 301 A.2d 572 (1973); *Langdeau* v. *Narragansett Ins. Co.,* 96 R. I. 276, 191 A.2d 28 (1963); *Morrison* v. *Lamarre,* 75 R. I. 176, 65 A.2d 217 (1949). An examination of the 1972 amendment shows no direct expression of retroactivity nor the presence of any language which mandates the drawing of such an inference. However, a statute lacking the requisite specificity or the necessary implication may still be applied retroactively if it qualifies as a so-called remedial or procedural statute. *Romano* v. *B. B. Greenberg Co.,* 108 R. I. 132, 273 A.2d 315 (1971); *Langdeau* v. *Narragansett Ins. Co., supra.* Such an exception may be employed if its invocation neither violates vested rights nor impairs contractual obligations. Nevertheless, aside from constitutional questions, there is an extreme judicial reluctance to give retrospective interpretations to statutes that change the jurisdiction exercised by courts. 2 Sutherland, *Statutory Construction* §41.08 at 279 (4th ed. 1973). When all is said and done, the question of whether and to what extent procedural or remedial statutes are to be given retroactive effect involves the matter of ascertaining the legislative intent. *Simonson* v. *International Bank,* 14 N.Y.2d 281, 200 N.E.2d 427, 251 N.Y.S.2d 433 (1964).

In seeking some evidence of the 1972 legislative intent, we would note that in 1961 when the General Assembly created the Family Court and endowed it with all of the powers both legal and equitable formerly exercised by the Superior Court when it sat as a court of domestic relations, it specifically provided that all "pending and undetermined" cases were to be transferred to and tried "de novo" in the Family Court. Public Laws 1961, ch. 73, §20.

The 1972 legislative language in conferring upon the Family Court the equitable powers, to which we have previously alluded, is completely silent as to the status

598

of pending Superior Court cases where one of the spouses has previously commenced divorce proceedings against the other and is in the Superior Court seeking the relief spelled out in the amendment. We believe that the 1972 silence has some significance because it indicates that the General Assembly never intended that spouses would be required to return to the Family Court and there relitigate an issue that has already been litigated. One can clearly contemplate the chaos and disorder that would ensue if the position taken by the wife was the law.

It is our belief that in 1972 the General Assembly enabled the Family Court to provide a form of one-stop service to a husband or wife who had commenced divorce proceedings through its bestowing on the court its newly found equitable powers. It is equally clear that the Legislature never divested the Superior Court of the traditional equity powers which it has exercised ever since this court was established in 1905 with the passage of the Court and Practice Act. Both courts now exercise a concurrent jurisdiction in the areas specified in the statute. In denying the wife's motion, the presiding justice of the Superior Court put the issue in its correct focus when he refused to yield to the Family Court and went on to observe that in light of the General Assembly action, principles of comity should guide each court so that the first court whose jurisdiction was invoked could proceed to resolve the issues presented to it. In affirming the presiding justice's denial of the wife's motion, we emphasize that the Family Court's power in accounting, partition or the other proceedings described in the amendment, is exercisable only in those instances where divorce or separation proceedings have been commenced. Those spouses who may disagree but not divorce or separate from the other will continue to seek the equitable relief deline-

ated in the 1972 amendment by going to the Superior Court.

The defendant's appeal is denied and dismissed.

Mr. Chief Justice Roberts was present at oral argument but retired prior to consideration and decision of this case. Mr. Justice Doris did not participate.

*Feiner, Winsten and Greenwald, Edward E. Dillon, Jr.,* for plaintiff-appellee.

*Matthew F. Callaghan, Jr.,* for defendant-appellant.